Good morning, your honors. Karen Lehman of the Federal Defenders of San Diego for Mr. Chavez-Gonzalez. And I will reserve two minutes of time for rebuttal. Your honors, in this case, the record fails to establish by clear, convincing, and unequivocal evidence that the substance of Mr. Chavez's state court conviction was a federally controlled substance. In this case, the government's alleging that it was cocaine. Because under Ruiz-Vidal and similar cases, this court has held that the California drug schedules are categorically overbroad, unless the record can establish that his substance of conviction was a federally controlled substance, his prior conviction is not an aggravated felony or a federal drug trafficking conviction, and he was improperly removed twice on those grounds. For these reasons, the district court erred in denying his motion under 132060 to dismiss the indictment. Now, the government points to several facts in the record that they believe established that the substance of conviction was cocaine. I think perhaps most relevant is the issue of Mr. Chavez's statements during his 2000 immigration removal hearing to the immigration judge. To be clear what happened, in 2000, the immigration judge asked, were you convicted on December 10th in Los Angeles County for possession of cocaine for sale? And Mr. Chavez said yes. Now, this case is factually distinct from the recent decision in Pagayan, and in fact, Pagayan actually supports our argument that these statements should not be admissible. Because here in Mr. Chavez's case, the record is clear that the immigration judge was not looking at any conviction documents when he asked this question. The record, which is found on page 42 and 43 of our ER, shows that the immigration judge did not enter exhibits into the record, he did not read from the conviction documents into the record, and he never handed Mr. Chavez a copy. All of those things happened in the Pagayan case. In the Pagayan case, the court began its opinion by summarizing a long line of cases, most recently culminating in the S. Yong v. Holder decision, that an alien's admissions to an immigration judge cannot substitute for the judge's obligation to conduct a modified categorical approach based on conviction documents. The specific holding in Pagayan, and this comes from page 1234, is, quote, we therefore make explicit what S. Yong suggests. An immigration judge may consider an alien's admissions regarding removability if they are corroborated by the narrow, specified set of documents that are part of the conviction record. Well, don't we have that in this case? Didn't Mr. Chavez's admissions, combined with the record of conviction, confirm that he was convicted of possession of cocaine for sale? Your Honor, I would disagree, because the Pagayan case is asking, when can an alien's admissions to an immigration judge be considered to establish the underlying facts of the offense? Because Mr. Chavez's immigration judge did not have those records in front of him, there's no Ninth Circuit precedent, or any precedent at all, that says that we are even, at this stage, allowed to consider what was said at that immigration hearing. It seemed to me that his admission appeared to be to count eight of the notice to appear. Isn't that correct? Do you mean the immigration notice to appear? Yes. The immigration judge never asked him specifically, do you concede removability? And I believe it was count four, but do you concede removability to this count? That's what happened in Perez Mejia, and that's why the court found that the Perez Mejia alien's admissions were permissible. But in this case, the judge never said, to count four in the notice to appear, do you concede removability, yes or no? The judge simply asked, were you convicted on this date for possession of cocaine for sale? And Mr. Chavez said yes. And in fact, in contrasting Mr. Chavez's case to Perez Mejia, Perez Mejia made a very strong distinction between conceding the allegations in the notice to appear and where an alien's admissions are admissible, versus an evidentiary portion of a hearing where the immigration judge is looking at sort of extraneous facts and trying to figure out what happened. Perez Mejia clearly states that an alien's admissions during an evidentiary hearing of a removal proceeding are not admissible. Well, this wasn't that, was it? I would argue that it was, actually. When Mr. Chavez's immigration judge began asking questions sort of off the script, such as in the record on page 42, the immigration judge asked, is there anything you would like to tell me about your case? No, Your Honor. But that's after the judge asked, were you convicted on December 10th for possession of cocaine for sale? That's true, Your Honor. The next question is, is there anything you would like to tell me? The next question is, did you file any appeal in the Criminal Court of Appeals regarding your conviction? So while, you know, temporally it is one, two, three, I would argue that that is a package set of questions that the immigration judge is asking with an eye towards figuring out what happened in state court. Therefore, I would argue that that makes it an evidentiary questioning rather than a simple concession of removability. What question do you think commences movement from the plea stage of the hearing to evidentiary? There's a series of questions that just tracks the NTA. That's correct, Your Honor. And in Perez Mejia, what was considered to be the pleading stage was exactly tracking the questions. You know, are you an alien? Did you get convicted of this? I agree that Mr. Chavez's, that colloquy does seem to track the notice to appear fairly well, but then those questions which are directly related to the conviction on December 10th move it into an evidentiary hearing. I agree. There's no clear-cut distinction. But here, because the immigration judge's questions went beyond the script, I would argue that that entire line of questioning is better considered to be an evidentiary line of questioning rather than a concession of removability. You mentioned count four as opposed, I mentioned count eight. I believe you're correct, Your Honor. Well, count eight I think is correct. You were on 12-10-98, convicted in the Superior Court of California, Los Angeles, for the offense of possession of cocaine for sale in violation of the code, and he said yes. Absolutely, Your Honor. That was my mistake. If you're correct, it is count eight. All right. Thank you. You can say I apologize. I do very much apologize, Your Honor. Accepted. Thank you. If Your Honors don't have more specific questions about that particular piece, I can also briefly address our argument, or the government's argument, I should say, that the fact of the plea colloquy, the no-contest plea to possession of a controlled substance for sale, establishes the fact that it was indeed cocaine. As we cited in our briefing, the case of Gwynn clearly states that a plea of no contest is not an admission of specific facts. It merely authorizes the trial court to weigh the trial and to proceed as if the defendant were admitting that he could be treated as guilty. Here, the plea colloquy in which the substance cocaine was mentioned does not establish the fact of cocaine. And I think what's important to note is that under the modified categorical approach, courts are instructed to look at the import under state law of a conviction. California state law, in an unconditioned plea agreement, or a plea where there's no plea agreement, a California state trial judge is actually not required to find a specific factual basis for accepting a plea. The substance of conviction, whether it was cocaine or any other Schedule III controlled substance, is irrelevant for the purposes of California state law here. And so this court is instructed in the modified categorical approach to look only at those facts that are necessary for the state court conviction. Because the substance of the underlying offense is not necessary, therefore that should not be considered as part of the modified categorical approach. I see now that I'm getting close to my rebuttal time, so I think I will step back and let the government take over. Good morning. May it please the Court. Victor White for the United States. I want to begin by taking up a question that Judge Nelson posed, which is, wasn't the admission combined with the judicially noticeable documents in this case enough? And the government's position is that it is sufficient. In fact, the district judge found that there was overwhelming evidence in this case that the substance of conviction was cocaine. Now, appellant relies on a series of cases, Rees-Vidal, S. Young, Nowicki, where there was insufficient evidence that the conviction was for a federally prohibited controlled substance, and those involved lawful permanent residence on direct appeal, where the government had the burden of proving by clear and convincing evidence that the individual was deportable as charged. Here we're in the context of a collateral attack to the immigration judge's deportation order, where it's the appellant who has the burden of proving that there was a due process violation and that that due process violation resulted in prejudice to him. And appellant here can't make that showing because, as was discussed earlier, there was already this admission to the immigration judge that he was convicted for possession of cocaine for sale. As the excerpt of record on page 42 shows, this case is just like Perez-Mejia in that this is at the pleading stage. The immigration judge's questions begin with, did you receive a copy of the allegations and charges of removals? Do you understand? Did you receive a copy of the charging document? Yes. And then the immigration judge goes through the series of questions that track the notice to appear. Are you a citizen and national of the United States? No. Are you a native and citizen of Mexico? Yes. Did you enter the United States through San Ysidro, California, on or about July 1, 1992? Yes. And were you inspected by an immigration officer or paroled? No. While the immigration judge doesn't take that additional step of asking, do you concede removability, this is clearly at the pleading stage where the appellant is making these admissions, which support the first series of questions, are the being present without inspection, and then the next question. And this is where this case is distinguishable from S. Young and is more similar to Perez-Mejia because the notice to appear, Count 8, as Judge Nelson pointed out, specifically identifies the conviction that it's a possession of cocaine for sale, so the substance of conviction, which is a federally prohibited substance, is identified in the notice to appear, and the appellant does make the admission that he was convicted for that offense. And then the next series of questions are just aimed at seeing whether or not there was an appeal or was there anything that would put that conviction in dispute. And then on page 43, the next question by the immigration judge is, if I order you removed from the United States, to what country do you wish to be removed? And the appellant responds, Mexico. So, again, everything in that exchange between the immigration judge and the appellant indicates that this is at the pleading stage and, therefore, Perez-Mejia controls here. With regard to Pagayan, the Pagayan case, as it applies here, here we have the benefit of a plea colloquy where the prosecutor specifically mentions, and this is in our supplemental excerpts of record, where the prosecutor indicates that the appellant would be pleading guilty to count one, and this is at page five of the supplemental excerpt of records and page three, count one, and that it identifies the case number and identifies the charge as violation of health and safety code section 11351. And then in a supplemental excerpt of records, the prosecutor specifically asks the appellant, Alonso Chavez, this is at page 12, Alonso Chavez, in case number BA168782, to the charge in count one, a violation of health and safety code section 11351, a felony offense, the crime of possession for sale of a controlled substance, in this case cocaine, to this charge, sir, how do you plead? And the appellant responds, no contest. The prosecutor goes on, and do you understand that a no contest plea is treated the same as a guilty plea? And the appellant responds, yes. So here we're not in a situation where there's a disconnect between the information and the abstract of judgment. Here everything connects on all fours that count one of the information, which lists cocaine, is connected through this plea colloquy where the substance of conviction is cocaine, and it's reflected in the abstract of judgment. It's also reflected in the minute order, which, again, the minute order shows that there was no amendment to the information. The information for count one is section 11351, and it does show that the defendant pled no contest. Would you address this issue of whether a no low plea has the same impact, for purposes of considering that as an admission, as a guilty plea would have? I think the appellant relies on the Gwinn case. That case is distinguishable because it was looking at a misdemeanor no contest plea in the context of sentencing. Here we're looking at, in the context of an immigration offense and immigration, for purposes of immigration law, what qualifies as a conviction. And I think the Ratuta case, and specifically the Immigration and Nationality Act at section 1101A48A, indicates that no contest pleas, as long as there was punishment that was also imposed, qualifies as a conviction. And I think the principle behind the modified categorical approach also supports the idea that, once the Immigration and Nationality Act's definition of conviction is satisfied, we're not going to go behind and start litigating, well, was there a sufficient factual admission that the substance was cocaine? The principle behind the modified categorical approach is, if there's a reliable, judicially noticeable document that there was a conviction, that suffices, and we weren't going to engage in many trials as to, well, what were all the facts behind the conviction? Well, when he's before the IJ, he's uncounseled, right? He has no attorney there. That's correct. He is asked if he wants to continue the case, and he indicates that he wants to go ahead with this hearing. Well, was he told about the fact that he could have an attorney? It appears that he was. The transcript was incomplete. Where does it say that? Do you understand your rights at this hearing? Yes. Have you hired an attorney? No. Well, so what? It doesn't have to be told of the importance of an attorney. They have to be told about the difference between a categorical approach and a non-categorical approach, that he understands the consequences of the admission that he's about to make, and that the consequences can be removed to Mexico. Was he told how he could satisfy his burden of proof by showing under the categorical approach that the offense was not necessarily an aggravated felony? Did he know all that? Your Honor, from the record, it doesn't appear that he was advised of, again. But shouldn't he have been advised of that? Your Honor, in this case, no, because the notice to appear in the second page at page 77 of the notice to appear indicates if you choose, you may be represented in this proceeding at no expense to the government by an attorney. The notice to appear, which, again, we're in the context of a ---- My understanding is that the I.J. has got to go through this colloquy with you, telling you about the importance of having a lawyer and all these other things I talked about. That wasn't done here. Your Honor, here we have basically the tapes of a 10-year-old proceeding were garbled. And so the portion that we were able to have transcribed is what's reflected on page 42 and 43. What does that mean? That means, Your Honor, that it's ambiguous. One portion that we do know is he indicates that he was previously advised of some rights. He indicates you understand your rights at this hearing. And he's asked specifically, have you hired an attorney? And he indicates no. Well, that doesn't mean he's advised that he has a right to an attorney or that it's advisable for him to have an attorney. Well, Your Honor, in the notice to appear, that second page does advise him explicitly of the right to representation. Yeah. Okay. It doesn't tell him about why it's important that he have representation. Though I suppose in these days where, or in the near past, where a disbarred lawyer could represent someone before the I.J. or almost anyone could represent people before the I.J., maybe that just didn't make any practical difference. You know what I'm talking about? I understand, Your Honor. And there have been numerous problems with these notarios and other unscrupulous individuals appearing in front of immigration judges. But on the record before this court, there's not, even if there were some pause with the appellant's admission to the immigration judge, there is his exchange where he is represented by counsel in the state court in the plea colloquy, where there he unambiguously pleads no contest to the charge of possession of cocaine for sale. Now, what if the modified categorical approach had been applied here? What would the result have been? The result would be that the modified categorical would find there sufficient evidence of the fact that it's cocaine for the reasons that the information charges cocaine, the information's connected to the abstract of judgment through this plea colloquy, where he indicates that it was possession of cocaine for sale. And, again, that's also connected through the minute order. And so here there is sufficient evidence to meet the modified categorical. What does the minute order say? The minute order indicates that he pled no contest to count one of the information. Uh-huh. Does it use the word cocaine? The minute order does not. But, again, the information does and the plea colloquy here both do. But you said and through the minute order. Well, through the minute order, because this court's cases do say that a charging document alone is going to be insufficient or an abstract of judgment alone is going to be insufficient. But here we have an information that clearly identifies cocaine, a minute order that says that it was to count one of the information, no indication that that information was amended, and that's what he pled no contest to. All right. Thank you. Thank you. Your Honor, the purpose of the modified categorical approach is to ensure that we respect the integrity of what happened at the state court, that we don't go back and try to find facts that the judge didn't find at the state court level. In this case, there is only one document that captures what the state court judge found. That is the abstract of judgment. It's on page 70, and under crime it says, possession of a narcotic-controlled substance for sale. If that state court judge wanted to specify that the substance was cocaine, he could have gone back into chambers and instructed his court clerk to insert the word cocaine. The word cocaine is not in the abstract of judgment. Because under California law, a state court judge is not required to specify the substance of conviction, we can't go back and second guess what that trial court judge was thinking. Perhaps as a response to the no contest plea, that trial judge was only satisfied that Mr. Chavez had pled to the statute, not to the specified substance. It's not our job to go back. And for those reasons, we would rest on our arguments that there is nothing in the record that establishes that the substance was a And for those reasons, Mr. Chavez is not an aggravated felony, and he was improperly removed on those two occasions. Okay, thanks. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Lynn, Pregerson, Nelson